# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:<br><br>RUSSELL H. HEBERT, JR.,<br>MARGARET H. HEBERT | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO: 19-11081<br><br>CHAPTER 13<br><br>SECTION A |
| SOUTH LOUISIANA BANK, *et al.,*<br><br>    PLAINTIFFS,<br><br>V.<br><br>RUSSELL H. HEBERT, JR.,<br>MARGARET H. HEBERT,<br><br>    DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADV. NO. 19-1123 |

## ORDER AND REASONS

Before the Court is the *Complaint, Objection to Discharge Of Debt to South Louisiana Bank* (the "Complaint"), [ECF Doc. 1], filed by Plaintiff South Louisiana Bank (the "Bank"), and the *Answer to Complaint* (the "Answer"), [ECF Doc. 4], filed by Russell and Margaret Hebert (the "Debtors"). For the reasons below, the Court **DISMISSES** the Complaint.

## JURISDICTION AND VENUE

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may hear and determine on a final basis under 28 U.S.C. § 157(b)(2)(J). The venue of the Debtor's chapter 13 case is proper under 28 U.S.C. § 1408.

## PROCEDURAL BACKGROUND

The Debtors filed their petition for chapter 13 relief on April 23, 2019 (the "Petition"). [No. 19-11081, ECF Doc. 1]. The Bank received notice of the bankruptcy filing, *see* Petition, at 26, and was listed on Schedule E/F as a creditor having an unsecured claim, [No. 19-11081, ECF Doc. 7, at 3]. The deadline to file non-governmental proofs of claim was July 2, 2019. [No. 19-11081, ECF Doc. 18]. This Court confirmed the Debtors' chapter 13 plan (the "Plan") on July 1, 2019, [No. 19-11081, ECF Doc. 33], and granted a modification of the Plan on October 24, 2019, [No. 19-11081, ECF Doc. 45].

The Bank did not file a proof of claim; instead, it filed the instant Complaint pursuant to 11 U.S.C. § 524(a)(2) on August 5, 2019, objecting to the discharge of the debt owed to it by Debtors under a 2018 Promissory Note on the ground that the loan was fraudulently obtained. The Court held a one-day trial on November 20, 2020. Dawn Pierron, Vice President and former loan officer of the Bank, testified on behalf of the Plaintiff, and Russell Hebert, Jr., testified on behalf of the Debtors. At the conclusion of the trial, the Court took the matter under advisement. [ECF Doc. 38].

## FINDINGS OF FACT[1]

Mr. Hebert is 77 years of age and has been married to Margaret Hebert for 57 years. *See* Hr'g at Min. 13:11–13:21. Mr. Hebert graduated from high school and completed six months of college. *Id.* Mr. Hebert testified that in 2013 he and Mrs. Hebert borrowed $159,518.00 from

---

[1] These findings of fact and conclusions of law constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

GMFS, LLC against the value of their home (the "Reverse Mortgage"). *Id.*; Bank Ex. 1.[2] The Reverse Mortgage was recorded on April 9, 2013, and the funds obtained by the Debtors through the Reverse Mortgage were used to pay off their first mortgage, make necessary home improvements, and cover medical bills. *See* Hr'g at Min. 13:11–13:21.

From 2014 to 2018, the Debtors obtained five separate unsecured loans from the Bank.[3] For each loan, Mr. Hebert met in person with Dawn Pierron, who was a loan officer at that time. *See* Hr'g at Min. 13:13–14:51. During their meetings, Ms. Pierron asked Mr. Hebert questions about his assets and liabilities and she would fill out each application on his behalf. *Id.* Mr. Hebert testified with certainty that in applying for the initial 2014 loan, Ms. Pierron asked him whether he owned his home, paid a mortgage, or rented his home, and he told her that time and each of the following years he requested a loan, that he paid no monthly note because of the Reverse Mortgage. *See* Hr'g at Min. 13:27–:30; 14:26 & 14:30–:32. Mr. Hebert stated he trusted Ms. Pierron to complete the loan applications accurately based on his answers. *See* Hr'g at Min. 13:27–:30; 14:30–:42.

Mr. Hebert admitted that he reviewed the application as filled out by Ms. Pierron, and that he and Mrs. Hebert signed the loan applications as "true and complete" and containing no misrepresentations therein. *Id.*; Bank Exs. 3–7. He could not explain why the Reverse Mortgage

---

[2] Typically, a reverse mortgage does not require the homeowner to make any loan payments; rather, the entire loan balance becomes due and payable when the borrower dies, moves away permanently, or sells the home.

[3] *See* Bank Ex. 2 (Promissory Note dated March 28, 2014, in the principal amount of $4,100.00 (the "2014 Loan")); Bank Ex. 4 (Promissory Note dated July 10, 2015, in the principal amount of $14,100.00 (the "2015 Loan"); Bank Ex. 5 (Promissory Note dated January 12, 2016, in the principal amount of $1,100.00 (the "2016 Loan")); Bank Ex. 6 (Promissory Note dated June 22, 2017, in the principal amount of $16,511.56 (the "2017 Loan")); Bank Ex. 7 (Promissory Note dated August 8, 2018, in the principal amount of $15,550.93 (the "2018 Loan")). The Bank contests the dischargeability of only the debt owed under the 2018 Loan.

was not listed, but testified that he was honest with Ms. Pierron each time he met with her to take out an additional loan. *Id.* Mr. Hebert also testified as to several other inaccuracies in the loan applications. For example, some of the loan applications list assets including a 2011 GMC truck and a four-wheeler, but Mr. Hebert testified that he owns a 1997 Ford F-150 and has never owned a 2011 GMC truck or a four-wheeler. *See* Hr'g, at Min. 14:39–14:44. Mr. Hebert testified that each time he sought a loan from the Bank, that he made no misrepresentations during the application processes and intended to repay each loan in full. *Id.*

Ms. Pierron testified that she has been employed with the Bank as a lender for fifteen years, and as Vice President of the Bank for two years, and is familiar with the Heberts' 2014–2018 loan applications. *See* Hr'g at Min. 15:00–15:02. She testified that there are two methods used by the Bank in determining whether and in what amount an individual qualifies for a personal loan with the Bank: (1) debt-to-income ratio calculation, or (2) the loan amount must be less than 10% of the borrower's adjusted net worth. *See* Hr'g at Min. 15:33–15:43. Ms. Pierron testified that if a borrower does not qualify for a loan under the debt-to-income ratio calculation, they may still qualify for a loan under the adjusted-net-worth calculation. *See* Hr'g at Min. 15:01–15:59. In addition to those two methods for assessing credit-worthiness, Ms. Pierron testified that it is also the Bank's policy to pull an applicant's credit report and to consider an applicant's entire loan file before making a determination on a borrower's eligibility. *See* Hr'g at Min. 15:59–16:03.

She testified that the Heberts barely qualified for the 2017 and 2018 Loans based on the information provided by Mr. Hebert. *See* Hr'g at Min. 15:01–15:59. According to Ms. Pierron, had Mr. Hebert disclosed the existence of the Reverse Mortgage, the Heberts would not have qualified. *Id.* Ms. Pierron further testified that for each loan, the Bank reviewed the Heberts' credit reports, but she admitted that the Reverse Mortgage was not listed on those reports. *Id.* She

stated that the Bank only learned of the Reverse Mortgage when it received notice of the Herberts' bankruptcy filing. *Id.* The Bank alleges that the Heberts obtained only the 2018 Loan by false pretenses, false representations, or actual fraud. *See* Complaint, ¶ 19.

## CONCLUSIONS OF LAW

### A. Standard of Review for Claims Made Pursuant to 11 U.S.C. § 523(a)(2)(A)

The Bankruptcy Code provides that debts obtained through false pretenses, false representations, or actual fraud may not be discharged. *See* 11 U.S.C. § 523(a)(2)(A). "[T]he Supreme Court has noted that . . . one of the main purposes of the federal bankruptcy system is to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character." *Reticulum Mgmt., LLC v. Watters (In re Watters)*, No. 20-30553, 2021 WL 3744408, at *8 (Bankr. N.D. Tex. Aug. 24, 2021) (citing *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018)). "Nondischargeability must be established by a preponderance of the evidence." *Cowin v. Countrywide Home Loans, Inc. (In re Cowin),* 864 F.3d 344, 349 (5th Cir. 2017) (citing *Grogan v. Garner*, 498 U.S. 279, 284, (1991)). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Id*. (quoting *Hudson v. Raggio & Raggio, Inc., (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)).

"The Fifth Circuit has distinguished the elements of false pretenses, false representations and actual fraud." *In re Porter*, 498 B.R. 609, 664 (E.D. La 2013) (citing *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1291 (5th Cir. 1995)). The distinction hinges on whether a debtor's representation is made with reference to a future event, a past or existing fact." *Id.* (citing *Bank of La. v. Bercier (In re Bercier),* 934 F.2d 689, 692 (5th Cir. 1991)). "For a debt to be

5

nondischargeable as a result of false representations under § 523(a)(2)(A), the creditor must show (1) a knowing and fraudulent falsehood, (2) describing past or current facts, (3) that was relied upon by the other party." *Jacobson v. Ormsby (In re Jacobson)*, No. 06-51460, 2007 WL 2141961, at *2 (5th Cir July 26, 2007) (internal marks and citation omitted). "While 'false pretenses' and 'false representations' both involve intentional conduct intended to create and foster a false impression, a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement." *In re Porter*, 498 B.R. at 664 (citations omitted). The Fifth Circuit and other circuits "have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." *Selenberg v. Bates (In re Selenberg)*, 856 F.3d 393, 399 (5th Cir. 2017) (citations omitted).

> Actual fraud, for purposes of § 523(a)(2)(A), requires that the creditor prove that
>
> (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.

*Id*. at 398 (citations omitted).

### B. The Debtor Did Not Obtain the 2018 Loan By False Pretenses, False Representation, or Actual Fraud

Having considered the testimony and evidence presented, and strictly construing the discharge exception against the Bank, the Court finds that the 2018 Loan is dischargeable as it was not obtained by the Heberts through fraudulent means.

Although the Court found both Mr. Hebert and Ms. Pierron to be earnest witnesses, the record reveals that multiple discrepancies exist in each of the loan applications (*i.e.*, collateral is listed to secure loans that Mr. Hebert never owned or possessed). Notably, the Heberts' home was

6

neither listed as an asset nor a liability in the 2018 Loan application, so it does not appear that the Bank relied on the value of the home in its decision to make the 2018 Loan. *See* Bank Ex. 7. Ms. Pierron, an experienced loan officer, completed those applications on behalf of Mr. Hebert, who presented as far less financially sophisticated. Those discrepancies and Mr. Hebert's testimony and countenance lead this Court to conclude that Mr. Hebert disclosed the existence of the Reverse Mortgage to Ms. Pierron. The fact that Ms. Pierron failed to include the existence Reverse Mortgage in any of the Debtors' loan applications is not an error that the Court construes against the Heberts.

Additionally, the fact that the Reverse Mortgage was not reflected in the Debtors' credit report is not within the Debtors' control. Credit reports are generated by private credit agencies and oftentimes do not paint a reliable picture of a borrower's assets and liabilities. The Bank could have consulted public records to ascertain the ownership of the Heberts' home. The Bank's failure to engage in adequate due diligence is also not a fact the Court will construe against the Debtors.

The record before the Court shows no indication that the Debtors knowingly made false representations to the Bank in any of the loan applications. Further, the Bank failed to satisfy its burden that the Herberts committed actual fraud in obtaining the 2018 Loan. Therefore, the Court dismisses all claims alleged in the Complaint and finds that the debt owed by the Debtors to the Bank under the 2018 Loan is dischargeable.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Complaint objecting to the discharge of the debt owed by the Debtors under the 2018 Loan is **DISMISSED** with prejudice in favor of the Debtors with each party to bear their own costs.

New Orleans, Louisiana, November 9, 2021.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE